19-3385 from the Western District of Missouri, United States v. Dionandre Ganter. Good morning, your honors. Can everyone hear me okay? Wait for council timeout. I haven't got Mr. Hearst pinned yet, and I can't find his...can't find him. He's on my screen. I don't see him either. He's listed under Ben Hearst, your honors. All right, there he is. Now I've got him on my list of participants. Now I've got him on my screen. Is everyone...if everyone else is ready. Yes. Mr. Kelly, you have the floor. Thank you, your honor, and good morning, and may it please the court. My name is David Kelly. I am appearing on behalf of appellant Dionandre Ganter. I would note that I am an appointed CJA lawyer on this case, as was the lawyer who was the trial counsel. I was not trial counsel. I was appointed after the trial and sentencing and carried the ball from there. So I make that caveat because I have a short amount of time this morning. Before I jump into my argument, I would candidly offer, if anybody has any questions, if any of the court has any questions right off the top that I can address. Otherwise, I'll start my argument. Well, counsel, Judge Loken, it seems to me the Elliott case cited by the government makes it clear that you're appealing for cause rulings by the district court, taking the Batson analysis of peremptory challenges to fault the prosecutor for leading the court into that. And Elliott says that's not the way we look at for cause issues. You have to appeal the court's ruling regardless of the government's role prior to that ruling. Do you do you agree that that's the proper framework here? Your Honor, I believe that that particular case is certainly applicable, but also might be distinguishable. And I want to be candid with the court. I bring to the court the issues that were given to me, you know, from a legal perspective. My from a defense perspective, I found that the first and last were chronologically the issues to be the most interesting and compelling. The first would be the self-representation issue. And then that was bookended by the sentencing issue. Counsel, I don't mean to force you away from the issues you think are the most persuasive or important on appeal. I just wanted that you had you invited a preliminary question. And of course, you're of course, you're playing the hand you were dealt. Go ahead to the way you want. You'd like to play it. And I will address your question, Judge, directly from the perspective of I do think that Elliot can be distinguished from the standpoint of how that particular conversation came together, whether you or anyone wants to characterize it as the court's action or the prosecutor's action. It was clear that it was the prosecutor who was a pro that was behind the strikes and it wasn't just the court. So I do think factually there is some distinguishing marks to be made. But I don't want to waste a whole lot of time on the bats an issue because I'll be candidates. It is troubling from a global standpoint of the fact that you have two African-Americans in the whole jury pool and they were taken out. And I think everyone in the case from the judge to the prosecutor to the defense recognized that that was unfortunate with respect to self-representation. I'm troubled by the fact that the court had a hearing, made a lengthy record about my client's request to represent himself, and then found that he had knowingly, voluntarily and intelligently waived that right and wanted or accepted the right to represent himself and wanted to move forward. It was only after the court then said, well, I'm not going to grant your continuance that it's our belief that the case law supports the idea that that that sort of is a tantamount to coercion. And I think the exact quote was somewhere along the lines of, well, if you're not going to grant my motions, maybe I'll just stick with the lawyer that I've got because she's got to counsel. And again, I was going to ask you about it. Do you have a case where the denial of a continuance was held or even held to be coercion or even a strong factor in a coercion ruling? Judge, the case that I cited in my brief, Polanyi, that is out of the Fifth Circuit, not of the Eighth Circuit, but I believe it's directly on point in a similar situation. And that court found that the trial courts, and in this case the magistrates, backtracking was not sufficient. It's sort of once my understanding of the law and the various case law to back it up, sort of once the waiver has been accepted, there is no fundamental right on behalf of a defendant to have hybrid representation or to go back and forth. And certainly we believe that Polanyi represents facts that established that that is not something that is OK. And I would like to turn briefly to the sentencing. Counsel, this is Judge Grimes. If I could follow up on that line of questioning. So let's suppose that the denial of the continuance did effectively revoke his right to self-representation. Does Mr. Ganter then also need to show prejudice? And was that shown in the Fifth Circuit case? In the Fifth Circuit case, they did talk about prejudice a little bit, but I didn't see that to be case determinative. It's de novo review, and it is a constitutional right. And as such, the prejudice prong or the prejudice review, I believe, is not actually case dispositive. It is a question of whether someone has clearly invoked the right to self-represent, whether that right and waiver was accepted, and then what happened after that. I do not believe that prejudice is the right way to look at this particular question. Thank you. OK. And then finally, well, not finally, but at the end of the case, I think it is significant that we have an individual who the district court determined had a sentencing guideline range of 57 to 71 months and ended up effectively sentencing him to triple that range at 180 months. And the argument isn't so much that the judge didn't have the jurisdiction to do that. The argument more falls on the side of, is it enough for a court to go through the 3553A factors and to simply make a generalized statement that then is supposed to support this, if you will, tripling of the recommended guideline range? And I believe in this particular case, the court noted that there were several instances of violence in the past, including eluding the police and obstructing the legal process. The court also noted that Mr. Ganter had a firearms violation at 19 and that, of course, the instant case. The only other weighing that took place was the court mentioning that Mr. Ganter was very young. And I think the question before the court today is, is that reasonable? Is it reasonable for a district court to effectively triple what is an advisory guideline range on that sort of paucity of a foundation and move on? The cases I've cited talk about it's not just enough to cite the 3553A factors and throw out a couple of facts and move on. There has to be a meaningful and engaged recitation of both sides and an explanation of how the court got to the final sentence. And Mr. Ganter's position is that was particularly lacking in this case. Is there anybody else that would have a question before I move on? Okay. The final two cases, of course, or the final two issues were sufficiency of the evidence. Again, my client is deeply troubled that the officer that retrieved the firearm was not the officer that allegedly saw the firearm get placed in the location that it was placed. There was no DNA that was done. And as you know, the cases are very clear that mere presence to a firearm is not sufficient. Moreover, I do not believe that the identifying officer ever identified the firearm in question conclusively as being the firearm that he saw the defendant place in the alleged flower pot. That is very fact driven, as is, frankly, this whole brief. But I think it bears review. I'm also concerned that the government has leaned on my client's alleged statements from jail as confessions when, in fact, the jail calls were more of a declaratory statements of I got arrested for this and I'm in jail for this. There was no, yeah, I had that particular gun and I possessed it and I was a felon and I should have known better. Not that you're ever going to get a perfect quote unquote confession like that, but it certainly does raise the question of whether or not that is sufficient evidence. Certainly there are. Anybody can take an inference from any evidence. But the question is, is it reasonable inference? And what a reasonable juror in that same circumstance believe that the evidence is sufficient as a matter of law beyond a reasonable doubt to sustain the conviction. Last but not least is the Batson issue. Again, I come back around to that because my client, being an African-American male, feels very strongly about this issue. Feels that the two African-Americans, in the court's words, took themselves out of consideration. But the reality is that a black person in the United States does have different experiences than a white person. And both of them affirmed at the end that they could fairly and impartially listen to the evidence and follow the judge's instructions. Yet they were still struck for cause. And on that basis, we would ask for either judgment of acquittal or remand as appropriate under each of the claimed violations. Thank you. Thank you, Mr. Mr. Hurst. Good morning, Your Honor. May it please the court. Ben Hurst for the United States. I think I'll start with the question that Judge Loken asked my counsel over there on either side. The question of, well, did he have to appeal the government, the district court's ruling on the four cause strikes? I think that's what Elliot says. And I think that the way to think about that in this case is that there were. There was an opportunity presented to the defendant's counsel to say, well, these these these two potential jurors have. Said that they're going to be willing to or able to fairly and impartially judge this issue, that they don't have any biases, that they're not having any problems fairly judging the credibility of law enforcement officers. And those are all things that were not said to the district or to the to the district judge when this came up. What defense counsel said, and I think the what the record shows was the view of everyone in the room. What defense counsel said was it's clear that you're twenty seven and I think number thirty five, thirty nine have kind of removed themselves already from the panel. And that's the place that the counsel counsel counsel judge Logan. I thought with respect to number thirty nine, when when the cause issue was being about to be ruled on. Counsel said, well, he conceded that the that the that the Bannerman made comments that raised the cause issue, but he said I still have to object. Right. Yes. That's that's correct. As opposed to number twenty, number twenty seven. I think there was there was a concession that the four cause ruling was warranted. Now, don't given the the preservation of that objection seems to me that that the fact that there was four cause was not raised post verdict is irrelevant. We have to we have to take up the four cause ruling as to number thirty nine on the merits under the case law. And Elliot and others for challenging the judge's ruling, not the prosecutor's conduct. I think that's right. In other words, it's before it's before us. I would disagree to this extent, Your Honor. I think that if the defense counsel wants to give you need to stay close, you need to stay closer to your mic. If you're breaking up, I'm sorry. Go ahead. I'll do that, Your Honor. I did. I would disagree with your with the preservation issue only to this extent. Your Honor's fairly characterized the way that the defense counsel raised it. She said, I have to object because I want to preserve the Batson issue. Now, we don't think that this is a Batson issue at all. We think this is a question of cause. But put that putting that aside. What defense counsel said was, I, I have to object to preserve the Batson issue. But I acknowledge that he was in so many words equivocal. Right. He said possibly, maybe. I don't know. And with respect to the question of whether he could fairly judge the credibility of a law enforcement witness, the same as he would a question of the credibility of any other witness. And that that would be a basis for a four cause strike. And so the the the point that the government would make on that is that in addition to the statement that is clear that I think number 39 is kind of remove themselves already from the panel. The defense want to preserve this issue. They need to fairly give the district court an idea of why they think the the jurors not remove themselves for cause. Counselor, let me let me insert here. It seems to me our our case law, particularly in affirming a trial court's refusal to strike for cause sets a very high standard. Almost or tells district courts you don't strike for cause unless you unless you are convinced that the person can't be fair. And taking that case law as the governing standard, it seems to me this issue is much harder than than you than you allow or that arguing it as a Batson issue suggests. And I don't think I don't think the fact that the counsel at the spur of the moment referenced Batson and not our four cause cases, I don't think means we don't have to look at it from the proper standard. Should the judge on this record given the the the presumption that people are willing to be fair unless they flat out say they can't be. It seems to me this is a this is a troubling issue as to number 39. Your Honor, to two responses to that, I think I've addressed the question of the the our basis for arguing waiver. But I'd like to respond particularly to the basis you've given with respect to four cause challenges. I there's some cases cited in our brief that say two things that I think are relevant to your Honor's question. One is it's it's the impartiality or the appearance of impartiality to that. We know that equivocal answers are not enough. And in particular, the question is, if the defense or if the juror is incapable of saying that they will be fair and impartial, if they say things like, I don't know, maybe probably I'll try. I'll do what I can. Those are those are the kinds of statements that actually permit and even require a district judge to to strike for causing a juror. And that's the that's exactly the kind of statements that juror number 39 was making. Like, I don't know if I can be fair and impartial. I don't I don't think. In fact, he was asked, you can be fair and impartial based on his experience with law enforcement in the community. And he said, well, counsel, if that's what I just I think I think you're I don't know what cases you're referring to. You cited Cravens in your brief. Cravens has a long quote from Moran, which is a Moran I'm thinking of was an in-bank decision that ends up essentially to fail this standard. A juror must profess his inability to be impartial and resist any attempt to rehabilitate his position. Now, that's that's a completely different standard than what you just talked. I'm sure you're you're there's there's language in other cases. And a lot of it depends whether it were whether the judge struck for cars or didn't, because we tend to defer to the judge's discretion. But I think you're wrong on the law, or at least not particularly right. Well, your honor, I, I, I would I would point your honor to United States versus Evans when a juror is unable to speak that she will sit fairly and impartially despite being asked repeatedly for such assurances. And we have no confidence that the juror will lay aside her biases and render a fair and impartial verdict. And then United States versus I'm going to mispronounce the name. Your honor, I apologize. Sifty thong them where the question was raised about these equivocal statements by the juror or the potential juror. And the court comes very clearly out and says it probably is not good enough. It's not good. In fact, the juror in that case said, I will try. And the court said, oh, that's that's not going to be good enough. But I'll add one additional point to this, your honor, and I think is relevant. If if if the court finds that this is a challenging issue or is is harder than maybe we've produced it, is that your number thirty nine was never going to serve on this jury anyway. Because your number thirty nine was the twenty eight or the the court needed twenty eight veneer to accommodate all of these strikes for cause. Juror thirty seven to before number thirty nine was the twenty eight veneer. And so even if the court had not struck number twenty seven or number thirty nine, number thirty nine was not going to be in the slate of twenty eight jurors that went before the parks for parentheses. So to the extent that there is even a question on the merits about and we don't we don't. I think the district court who was in the courtroom and I think the court should give due consideration to the fact that the district court here was in the courtroom that all was able to observe. Number thirty nine's demeanor is answering the questions, his responses, all of those things were things that don't come through on a transcript, but were things that are present before the district judge and reasons that this court gives the district judges wide latitude when it comes to their discretion in how they evaluate these issues. And I think that's something the court should give consideration to here, especially because if there had been any concern about the responses or about the demeanor, about those things that we can't see on the transcript that the district court can see, but that we can't see that was something that defense counsel needed to bring to the district court's attention. So the district court had an obligation at that point to sort of explain, well, here I saw that I saw the number thirty nine do this. You're shaking his head. He was looking side to side. He was you know, he couldn't. He looked very unwilling or uncomfortable, but those are not things that were brought to the court's attention because of the way this was preserved or not preserved in our case. But in any event, I think that the question is, it was just never with respect to thirty nine. He was just never going to serve on the jury. And so that's a way this court can resolve and affirm the district court without getting to without getting to these other issues in this discrepancy between our view of how things are in the case. A lot of you, as you described it. If if if there are no other questions about that, the juror issue, I'll take a couple of minutes. Oh, I'll give you a chance before I stop. Keep talking. With respect to the the the issue of self-representation, I don't I see the way of phrasing framing it in those terms. I know that's a a framing that defendants use as appellants often to turn what are really issues about discretionary continuance motions into issues about Faretta. This court is repeatedly rejected that kind of approach, especially as it comes in the weeks before a trial date, when it looks as it as it looks in this case as it is a delay tactic, as something that is done for for whatever reason to push the trial off again. One thing that the magistrate judge knew here, and as I explained in my brief, that this case had been set for two years and had been repeatedly reset. So there was a large quantity of time that had that had passed. But in addition, there were also a large number of continuances that were granted. And the magistrate judge here expressed her concern about the docket management issue. So I think that another way to look at this case or a way to look at the Sixth Amendment issue that's been presented is that the magistrate judge was more than willing to let Mr. Dancer go to represent himself or to go with counsel. And she granted which either way that he wanted to go. She was willing to grant him the leeway to do that. But but in this case, what he wanted was to go pro se on his own schedule. And that's the sort of thing that that a district judge is not required to do or measure that is not required to do under the Sixth Amendment. And I just I think that this is repreparing. I think about the quote from Volpen tested case center is, I quote, I cited, which says that the the defendant who elects to proceed pro se on eve of trial does so at his own peril. What that means is that there's no inherent right in the Sixth Amendment to go pro se on your own schedule immediately before the trial date. And I think that's what Mr. Dancer was trying to do here in the in the magistrate judge didn't didn't air or plainly or otherwise in refusing to let him do that. And I'll just note for the court that this is an issue that really should have been raised to the district judge under Rule 59. It wasn't. And for that reason, this court should not even consider it. Just as it as it said in Kelly, I'll make two quick points about about sentencing and the evidence. The court has no other no questions about the self-representation issue. I just say one thing, Paulani, I think, is a cited by the defendant is a case that actually very much supports the government's position. The reasons I state in my brief that what the court erred in planning is that the defendant was willing to go with counsel if he was denied the continuance. And so what the court did was divorce those two issues. It said, well, the district court's continuance ruling was correct. It's a question about the self or the representation by counsel was incorrect. And here the magistrate judge did exactly what Paulani's judge should have done on the sentencing issue. The one thing I'll notice, it's the judge who gave a long explanation. We know under Gaul that extraordinary variances, even if you could consider this an extraordinary variance, do not require extraordinary circumstances. And this is a defendant with who had some tile by the age of 30, amassed 25 criminal history points, which is twice the number that it takes to put you in criminal history category six, which was an issue that the court noted and was particularly concerned also about the nature of those those crimes. There was a lot of violence, domestic violence and a lot of and at least one one firearm crime with respect to the to the evidence. Unless the court has questions about that, I'm I'm I see I'm out of time. I'm I'm more than happy to rest on my briefs with respect to the evidence. Very good. I've seen Mr. Kelly. Mr. Kelly, you've got some rebuttal time. Just briefly, judges. Thank you again for hearing my client's issues today. I'm going to go back to the self representation issue just briefly. You know, as a trial lawyer myself and having worked for Judge Russell Clark in Springfield, I know that issues that happen in trials such as the Batson for cause issue and even potentially sufficiency, you know, things kind of come up as they do. And, you know, the procedure isn't always followed 100 percent, which leads me. It's kind of a bang, bang thing sometimes. And not everything is perfect. And I would hope you would review those claims in that within that scope. With respect to self representation in the sentencing, however, I'm particularly troubled that the magistrate had a full. The transcript goes on for pages hearing about his his rights and the downfalls of representing yourself. And then the magistrate accepted his way. And then once it became clear that a continuance would not be granted to him, he then said, well, that, you know, essentially said that prejudices me. I'm going to let this person continue. I still come back to you. I'm concerned that there was this full hearing. The waiver was granted. And as someone who gets appointed as standby counsel myself, I can tell you that I know the Eighth Circuit's law on this. There is no right to a hybrid representation and that going back and forth is highly disfavored. And I think we have to kind of turn flip that coin on its head and say, well, once you've accepted a waiver, can somebody just sort of unwaive it because they don't like something the court does? Or does the court have to then backtrack and make it sort of an equally firm record about the decision to unwaive and admonish the defendant going forward that there will be no back and forth? And from a practitioner standpoint, I think that is particularly something that could use this court's guidance. And I do think it is somewhat in a gray area, to be quite honest. Now, this was this was three weeks before trial. This is unwaiving. So there was there was there was plenty of time to go to the district court and review how the continuance and prerogative issues should be resolved. Counsel was back in control. So we don't we don't have a problem of whether a pro se defendant should know that you have to appeal the magistrate. So it seems to me the way the waiver argument is is is pretty, pretty heavy here. And, Judge, I see that I'm out of time and I am. Thank you. You know, respond to that, though. OK, thank you, Judge. Your Honor, what I would say to that particular question on your part is that if if you have an individual who is dissatisfied with his lawyer decides to represent himself and then because he feels compelled and forced to take over for himself, he would then be in a very awkward position, as would the lawyer of then appealing it to the district court, saying that effectively, I still want this person gone, even though I'm on the eve of trial, which I think brings its own problems to the table. And with that, I thank you all very much. Thank you, Mr. Mr. Kelly. My notes don't show. Were you appointed counsel for this? I was, Your Honor. I was appointed after last appointed counsel had to be removed from the case. Well, the court very much appreciates your your help under the Criminal Justice Act. I appreciate it. It's been well briefed and argued by both counsel and will take the case under advisory.